HIGGINS, Justice.
 

 The state of Louisiana, through the Secretary of State, filed a rule under the provisions of Act No. 8 of 1932, against the defendant for an additional corporation franchise tax for the year 1933, amounting to the sum of $17,626.52, together with a 20 per cent, penalty, or $3,525.30, 10 per cent, attorney’s fees on the total amount claimed, or $2,115.18; and $100 representing the costs of examination of the defendant’s books — making the total additional sum claimed $23,367.
 

 The defense was that defendant was a domestic parent or holding corporation and as such was entitled to deduct from its own capital, surplus, and undivided profits, the capital, surplus, and undivided profits of its subsidiaries, as provided for by section 3 of the statute, because the subsidiary corporations had paid the franchise tax due, in accordance with the provisions of the statute, on all capital, surplus, and undivided profits allocated for the purpose of carrying on their businesses in this state, and because the balance of the capital, surplus, and undivided profits of the subsidiary corporations was employed in carrying on their respective businesses outside of the state and, consequently, not subject to the franchise tax, under the act in question.
 

 Defendant averred that in making its report to the Secretary of State, it had errone
 
 *826
 
 ously failed to deduct from its capital, surplus, and undivided profits, the capital, surplus, and undivided profits of one of its foreign subsidiaries, not subject to any tax, as a result of which it had inadvertently paid the state the sum of $1,710.48, instead of the minimum franchise tax of $10 actually due under the statute, and that it was entitled to a refund of $1,700.48 which was claimed in reconventipn, under the last paragraph of section 2 of the act.
 

 There was judgment in favor of the plaintiff as prayed for, and the defendant has appealed.
 

 The defendant, Wesson Oil
 
 &
 
 Snowdrift Company, Inc., is a Louisiana holding or parent corporation composed of several domestic and foreign subsidiaries. The capital, surplus, and undivided profits of the defendant and its subsidiaries, respectively, as of their fiscal year ending August 31, 1932, was as indicated opposite their names, as follows:
 

 Domestic Parent or holding Corporation:
 

 Wesson Oil
 
 &
 
 Snowdrift Company, Inc. (Total capita], surplus and undivided profits employed in and outside of La.) $25,224,165.55
 

 Name and State of Incorporation of Subsidiary-Corporations :
 

 The Southern Cotton Oil Company, New Jersey... $21,406,343.90
 

 The Southport Mill, Limited, Louisiana..'......... 1,690,043.98
 

 Gulf & Valley Cotton Oil' Company, Inc., Louisiana 717.446.99
 

 Sco Tank Line, Inc., Louisiana ...................... 351,934.38
 

 South Texas Cotton Oil Company, Texas (no business or capital in Loui- . siana) ..................... 1,525,147.24
 

 Total capital, surplus and undivided profits of all subsidiaries, employed in and outside of Louisiana............ $25,690,916.49
 

 The defendant, Wesson Oil & Snowdrift Company, Inc., on August 31, 1933, pursuant to Act No. 8 of 1932, filed its report with the Secretary of State, in order to fix the franchise tax for the year 1933 on the basis of its fiscal year ending August 31, 1932, showing after the claimed deductions of the capital, etc., of its subsidiaries, from its own, a net tax due of $1,710.48, which was .paid to the state contemporaneously with the filing of the report. The capital', surplus, and undivided profits of the South Texas Cotton Oil Company, a foreign corporation with no assets, capital, or business in this state, was not deducted from defendant’s capital, etc.
 

 On August 31, 1933, all of the defendant’s subsidiaries also filed their respective Reports for the fiscal year ending August 31,1932, and paid the admittedly correct amount of the franchise taxes due by them, as required by the act, on that part of their capital, surplus, and undivided profits allocated to the state of Louisiana for the purpose of carrying on their businesses in this state. It is conceded that the amounts allocated by the respective subsidiaries are as follows:
 

 The Southern Cotton Oil Company.......$3,162,587.78
 

 The Southport Mill, Limited.............. 1,683,636.35
 

 Seo Tank Line, Inc......................... 351,934.38
 

 Gulf & Valley Cotton Oil Company, Inc... 688,838.37 South Texas Cotton Oil Company (Foreign. No assets or business in Louisiana...................................... 0
 

 Total ......................................$5,886,966.80
 

 The total franchise tax amounted to $5,887, being $1 per $1000 of capital, surplus, and undivided profits employed in Louisiana. .
 

 It is admitted that, if the contention of the plaintiff is correct, the taxes due by defendant would be $19,337 less $1,710.48, the
 
 *828
 
 amount heretofore paid by defendant, plus $100 for the costs of examination of its books, and such penalties and attorney’s fees as the court might find to be legally due.
 

 Plaintiff contends that defendant is entitled to deduct from its capital, surplus, and undivided profits only the allocable portions of capital, surplus, and undivided profits of its respective subsidiaries, with respect to which the subsidiaries paid their franchise taxes to the state.
 

 Defendant contends that, under the plain language of the statute, it is entitled to deduct from its capital, surplus, and undivided profits, the entire capital, surplus, and undivided profits of all of its subsidiaries.
 

 Subdivision 4 of section 1 of the act levies upon a local corporation “a franchise or license tax for the privilege of carrying on, doing business or the continuance of its charter within this State, at the rate of one dollar ($1.00) for each one thousand dollars ($1,000.-00) on the determined amount of its capital stock, surplus and undivided profits, determined as herein provided for; and provided that such tax shall not be less than ten dollars ($10.00) in any ease.”
 

 Subdivision 3 of section 2 of the act levies upon a foreign corporation “a franchise or license tax for the privilege of carrying on, doing business or the continuance of. its charter within this State, at the rate of one dollar ($1.00) for each one thousand dollars ($1,000.-00) on the determined amount of its capital stock, surplus and undivided profits, determined as herein provided for; and provided that such tax shall not be less than ten dollars ($10.00) in any case.”
 

 With respect to foreign corporations, the statute in subdivision 2 of section 2 provides:
 

 “For the purpose of ascertaining the tax hereby imposed, every foreign corporation subject to said tax is deemed to have employed in this State the proportion of its entire outstanding issued capital stock, surplus and undivided profits, computed on the basis of the ratio obtained by taking the arithmetical average of the following two ratios:
 

 “(a) The ratio that its property and assets in this State bears to all of its property and assets wherever situated; and,
 

 “ (b) The ratio that the volume of business done in this State bears to the total volume of business done by the corporation. * * *
 

 “The proportion of capital stock, surplus and undivided profits allocated for franchise taxation under this, section shall in no ease be less than the total assessed value of real and personal property in this State of each such foreign corporation.”
 

 With respect to local corporations, the statute in subdivision 3 of section 1 provides:
 

 “If' any corporation organized under the laws of the State of Louisiana operates or does business, in whole or in part, outside the State of Louisiana, said corporation shall pay the tax hereby levied only on that part of its capital stock, surplus and undivided profits allocated to operation and business within the State of Louisiana, in the same manner as the capital stock, surplus and undivided profits of foreign corporations are allocated under the provisions of this act.”
 

 Thus, it will be seen that the same kind of tax is levied upon local and upon foreign corporations, and the same measure of tax is pro
 
 *830
 
 vided for both classes of corporations. It is evident that the Legislature intended to place a franchise or license tax upon both domestic and foreign corporations in proportion to the amount of capital, surplus, and undivided profits set aside to be used, or used in carrying on their businesses or continuing their franchises in this State. In other words, they are treated alike.
 

 There is no doubt that the state can tax domestic corporations on a different basis than foreign corporations. In the case of St. Louis Southwestern R. Co. v. State of Arkansas, 235 U. S. 350, 35 S. Ct. 99, 59 L. Ed. 265, it was held that the state, in assessing a tax against a foreign corporation, must measure the tax only on that proportion of the capital, surplus, and undivided profits of the corporation employed in its business within the state. See, also, Air-Way Electric Appliance Corp. v. Day, 266 U. S. 71,
 
 45
 
 S. Ct. 12, 69 L. Ed. 169.
 

 In the case of Cream of Wheat Co. v. Grand Forks County, 253 U. S. 325, 40 S. Ct. 558, 64 L. Ed. 931, it was held that the state, in levying a tax against domestic corporations, has the right to assess the tax on their entire capital, surplus, and undivided profits, even though all of their property and business be in other states wherein they may be subject 'to additional taxation.
 

 Therefore, we see that, while the state of Louisiana has a right to tax all of the capital, surplus, and undivided profits of operating corporations organized and existing under the laws of this state, the Legislature did not do so, but only taxed them on the amount of capital, surplus, and undivided profits allocated for the purpose of carrying on or doing business in this state or continuing their franchise.
 

 Did the Legislature intend to treat a domestic holding or parent corporation different from a domestic operating corporation? The last paragraph of section 3 of Act No. 8 of 1932 contains the following language:
 

 “Any parent or holding corporation, having one or more subsidiary corporations, shall be entitled to deduct from its capital, surplus and undivided profits, as herein defined, the capital, surplus and undivided profits, as herein defined, of such subsidiary corporations, if such subsidiary or subsidiaries have paid the tax (if any) due by them hereunder. Subsidiary corporation is defined to be a corporation the capital stock of which to an extent of at least 80% is owned by a parent or holding corporation.”
 

 Learned counsel for the plaintiff argues that the capital, surplus, and undivided profits of the holding company, “as herein defined,” refers to its entire capital, surplus, and undivided profits, but that the capital, surplus, and undivided profits of the subsidiary or subsidiaries, “as herein defined,” refers to the capital, surplus, and undivided profits allocated for the purpose of carrying on business or continuing the corporate franchise in this state, and that amount alone is deductible in computing the tax; that the parenthetical phrase “(if any)” was used to explain and emphaáize the fact that, if there was no tax ■to be paid by the subsidiary under the act, there could be no deduction of its capital, etc.; that the purpose of the act was to produce revenue, and if the defendant’s construction were adopted, the statute would be destroyed and nullified, because a domestic cor
 
 *832
 
 poration could evade the whole tax by resorting to the subterfuge of organizing foreign corporations with capital, surplus, and undivided profits equal- to that of the domestic corporation.
 

 We shall discuss these points in the above order.
 

 The definition of “capital, surplus and undivided profits” and the meaning of “allocation” are not synonymous. Subdivision 4 of section 1 of the act defines the capital, surplus, and undivided profits of Louisiana corporations, as follows: “The said domestic corporation taxed under this act shall determine the amount of the- issued and outstanding capital stock, surplus and- undivided profits of such domestic corporation, which in no case shall be less than the assessed value of all the property of such domestic corporation in this State for the year for which report is made; provided that if the capital used or invested in the business or enterprise of such corporations includes borrowed capital in excess of the capital stock, surplus -and undivided profits of such corporation, such excess or borrowed capital shall be added to the capital stock, surplus and undivided profits as part thereof as the basis for computing the franchise tax under this act and determining the extent of the use of its franchise in this State.” This provisiones made to apply also to foreign corporations.
 

 The capital, surplus, and undivided profits of a Louisiana corporation is fixed and deterrffined without any reference to any allocation thereof among the several states in which.it carries on its business. Allocation refers to that part of the capital stock, surplus, and undivided profits set aside to be used, or used by the corporation to carry on its business or continue its franchise within the state, as explained in subdivision 3 of section 1 of the act. In short, one deals with the whole and the other deals with a portion thereof. It will be noted that the words are “capital, surplus and undivided profits, as herein defined,” and not “capital, surplus and undivided profits, as herein defined and allocated.” It seems clear to us that these are two separate and distinct propositions.
 

 The language of the paragraph in question gives a holding corporation the right to deduct from its own capital, etc., the capital, etc., of its subsidiaries “if such subsidiary of subsidiaries have paid the tax (if any) due by them hereunder.” It is plain that a Louisiana subsidiary must pay a tax under the act, even though it does not have property, or do business in the state, because it is a local corporation and, therefore, must pay, at least, a minimum tax for the purpose of continuing its franchise. It is clear that a Louisiana corporation’s foreign subsidiary which has property or does business in the state of Louisiana must be taxed under the act, because it is employing here capital that must be allocated to this state under the provisions of the act. Therefore, it was not necessary to use the words “(if any),” in order to allow the deduction of the capital -of either a subsidiary or subsidiaries organized under the laws of Louisiana, or a foreign subsidiary or subsidiaries which had property or did business in Louisiana, because both classes of subsidiaries would “have paid the tax due by them” in accordance with the statute.
 

 There is only one other class of subsidiaries which a Louisiana parent corporation might
 
 *834
 
 have, i. e., a foreign subsidiary which does not have property or which does not do business in Louisiana. If the words “(if any)” were not inserted in the paragraph in question, the capital, etc., of subsidiaries of this latter class would not have been deductible for such subsidiaries would not “have paid the tax due by them thereunder,” since no tax would “have been due by them thereunder.” Without the words “(if any)” the local parent corporation would not be authorized to deduct from its capital, etc., the capital, etc., of such subsidiaries, for such subsidiaries would not have been required to pay the tax under the act. Consequently, the only purpose for which the words “(if any)” could have been inserted, was to allow the deduction of the capital of such foreign subsidiaries. It appears to us that the Legislature intentionally placed those words in the act for that specific purpose.
 

 There is nothing in the statute which suggests that, if a Louisiana corporation, instead of doing business itself in other states, organizes foreign subsidiaries to do that business, the Louisiana holding corporation shall pay a greater tax under the statute than the minimum tax of $10. The words “(if any)” were placed in the act so that the capital, etc., of such subsidiaries invested in other states would be deductible and, therefore, not taxed. In other words, the deduction of such subsidiary’s capital, etc., does for the parent corporation only what allocation of capital, etc., for the purpose of carrying on its business in this state, does for an operating corporation.
 

 In the plaintiff’s brief iti is conceded that a foreign corporation which has no assets, capital, etc., invested in this state and does not do business here, would not be subject to any tax under the statute. It is also conceded that the capital, surplus, and undivided profits of a local operating corporation invested in another state is not subject to any tax under the act. In other words, the Legislature did not contemplate raising revenue on capital, surplus, undivided profits, or assets invested by local and foreign operating corporations outside of the state of Louisiana. The Legislature intended to create an additional corporation tax termed a franchise or license tax on the capital, surplus, and undivided profits or assets of local and foreign operating corporations used or set aside for the purpose of carrying on, or doing business in this state, or continuing their franchise here. The tax is a tax upon the exercise of a franchise measured, however, by the extent of the use of the franchise.
 

 The deduction allowed by section 3 of the act does not permit Louisiana corporations to avoid any portion of the tax by organizing foreign subsidiary corporations. If a Louisiana operating corporation with capital, surplus, and undivided profits of $10,000,000, doing no business and having no property in Louisiana, becomes a holding corporation and forms a number of foreign subsidiary corporations, to which it transfers all of its assets, it escapes no tax, because, as a Louisiana operating corporation, with no capital allocable to the state of Louisiana, it owes no tax except the minimum of $10. Therefore, it could not escape a tax which it did not owe. In like manner, if a Louisiana operating corporation with a capital of $10,000,000, of which $5,-000,000 is allocated to the state, forms any number of foreign subsidiaries, and transfers all of its assets to the foreign subsidiary cor
 
 *836
 
 porations, it escapes no tax, for, if it transfers to the foreign subsidiaries assets which are allocable to the state of Louisiana, those assets still remain allocable to the state of Louisiana, even though owned by the foreign subsidiaries. On the other hand, if the assets transferred to the foreign subsidiaries were not allocable to the state of Louisiana, they were never taxable in the first place. In other words, since both foreign and domestic operating corporations are taxed upon the capital allocated to Louisiana, in proportion to their business done and property owned in Louisiana, it makes ño difference whether the capital allocated to Louisiana is owned by one local operating corporation or by several foreign subsidiaries owned by a holding corporation. The tax must be paid.
 

 Finally, it might be well to say that the practical effect of the plaintiff’s position would be to force the holding corporation to pay a tax on capital, surplus, and undivided profits invested by its subsidiaries outside of the state, when it is conceded that the subsidiary operating corporations whether foreign or local could not be forced to do so.
 

 It is our opinion that from a literal construction of the language of the last paragraph of section 3, as well as interpreting it in the light of the purpose and spirit of the act, the Legislature intended that the holding or parent corporation was entitled to deduct from its capital, surplus, and undivided profits, the entire capital, surplus, and undivided profits of all of its subsidiaries in computing the franchise tax.
 

 For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from is annulled, avoided, and reversed, and plaintiff’s rule is dismissed; and it is now ordered, adjudged, and decreed that there be judgment herein in favor of the defendant, Wesson Oil & Snowdrift Company, Inc., and against the state of Louisiana, through the Secretary of State, on its claim in reconvention, in the sum of $1,700.48, without interest.