200 So. 149

**RATHBORNE v. COLLECTOR OF REVENUE.**

No. 35011.

Jan. 6, 1941.

Eugene Stanley, Atty. Gen., and E. Leland Richardson, Cicero C. Sessions, and A. Leon Hebert, Jr., all of Baton Rouge, for appellant.

Louis C. Guidry and Dart & Dart, all of New Orleans, for appellee.

HIGGINS, Justice.

The State Collector of Revenue ruled that there was a deficiency of $966.56 in the plaintiff's income tax for the year 1934, as a result of erroneously deducting losses sustained in the sale of "capital assets." By virtue of the provisions of Section 83 of Act 21 of the Legislature of 1934, the plaintiff appealed to the State Board of Tax Appeals, which approved the Collector's ruling that losses sustained in the sale of "capital assets" could only be deducted to the extent of capital gains.

Under Section 80 of the above act, the taxpayer appealed to the Nineteenth Ju-

dicial District Court for the Parish of East Baton Rouge, which annulled the decision of the Board and held that as the Legislature failed to define the term "capital assets" it should be given its usual meaning, i. e., fixed assets or assets of a permanent nature connected with a trade or business, and as the plaintiff was not engaged in the trade or business of selling bonds, she was entitled to deduct capital losses sustained through the sale of bonds in excess of the capital gains made thereby and, therefore, there was no deficiency in her income tax for the year 1934. The Collector appealed.

The learned trial judge has clearly stated the issues and cited pertinent authorities in support of his conclusions and we parenthetically add other authorities, in quoting his opinion with approval:

"This is a proceeding by Mrs. Georgie W. Rathborne in which she prays that the court review a decision of the Board of Tax Appeals of the State of Louisiana, approving the action of the Collector of Revenue in determining a deficiency of $966.56 in her income tax for the year 1934.

"The proceeding is brought under Section 83 of Act 21 of 1934, conferring upon the Court the power to review decisions of the Board of Tax Appeals.

"The case was submitted and argued upon the record as made up before the Board of Tax Appeals.

"From a careful reading of the pleadings in the case, as well as the opinion of the Board of Tax Appeals it appears

that the petitioner in her income tax return for the year 1934 deducted from her gross income the sum of $23,848.42, representing losses she sustained in the sale of certain bonds. She claims that she was not, during said year, engaged in the business of buying and selling bonds and securities, and that the bonds from the sale of which she sustained said losses were acquired by her in a transaction entered into by her for profit.

"As stated in the well-written opinion of the Board of Tax Appeals:

" 'The question presented for determination is one of law only and is whether the bonds on which petitioner sustained a loss in 1934 were capital assets.'

"The Board of Tax Appeals answered this question by holding that the bonds were capital assets within the meaning of the statutes of 1934 and sustained the ruling of the Collector that the deduction to which plaintiff says she was entitled was not permissible.

"The Board of Tax Appeals concedes that the words 'capital assets' were not defined in the Acts of 1934, and it also concedes, necessarily, that the question here involved must be decided under the Act of 1934.

"In a subsequent act, that is, Act 143 of 1936, the words 'capital assets' were defined, but, as stated, this subsequent act has no application to this suit.

"The Collector based her ruling upon Section 9(j) of Act 21 of 1934, reading as follows:

" 'Capital Losses.—Losses from the sales or exchanges of capital assets shall be allowed only to the extent of the gain from such sales or exchanges.'

"While the words 'capital assets' as used in this section are not defined in the act, the Board of Tax Appeals held that within the sense of the act they were intended to include any bonds acquired as an investment.

"The Board in its opinion had this to say:

" 'We agree with petitioners that since the Legislature in 1934 failed to specifically define the term "capital assets" these words must be given their usual and ordinary meaning, but we do not agree with her in her contention that the usual and ordinary meaning of this term insofar as tax purposes are concerned, is assets used in a trade or business.' (Burnet v. Chicago Portrait Co., 285 U.S. 1 [52 S.Ct. 275, 76 L.Ed. 587].)

"Petitioner claims on the one hand that the usual and ordinary meaning of these words is one thing while the Collector contends that it is another. Both agree, however, that they should be given their usual and ordinary meaning.

"The Board of Tax Appeals directs attention to Article 15 of the Revised Civil Code which provides that:

" 'Terms of art or technical terms and phrases, are to be interpreted according to their received meaning * * * with the learned in the art, trade or profession to which they refer.'

"The Board says:

" 'The various Federal Revenue Acts, as well as State Acts, and the court decisions thereunder have developed a scientific and technical concept of the term "capital assets" distinctly different from that attributed to it by the dictionary.'

"Petitioner's contention is that it makes no difference whether the words 'capital assets' are to be construed according to their received meaning with the learned in the accounting profession or according to the definition contained in well-recognized and accepted dictionaries, for the reason that meaning is the same in both, and that is, 'permanent assets.'

"Plaintiff quotes a definition contained in the Century Dictionary, as follows:

" '(2) Specifically, the wealth employed in carrying on a particular trade, manufacture, business, or undertaking; stock in trade; the actual estate, whether in money or property, which is owned and employed by an individual, firm, or corporation in business.'

"She also quotes the following from [1] Bouvier's Law Dictionary [Rawle's Third Revision, 419]:

" 'The sum of money which a merchant, banker or trader adventures in any undertaking, or which he contributes to the common stock of a partnership, and also the fund of a trading company.'

"From these two definitions, one in an ordinary dictionary, the other from a law dictionary, plaintiff claims that the usual, ordinary and popular meaning of 'capital

assets' is property used in a business or undertaking.

"In the 14th Edition of the Encyclopedia Britannica, verbo fixed assets, we find the following:

" 'Fixed assets, also known as capital assets, are assets (q. v.) of a lasting nature (which are acquired for the purpose of carrying on a business) and which are intended as a permanent investment. (Such assets as land, buildings, machinery and equipment, furniture and fixtures, patterns, drawing and durable tools are included in this group.) Ordinarily, securities such as stocks, bonds and long term notes are also regarded as fixed assets. . This is notably true if these securities present holdings in affiliated companies. (If they do not, and if they might be disposed of without interference with the operation of the business, they may be grouped under "other" or "miscellaneous" assets. The practice of including the capitalized value of patents, trade-marks and good will in the fixed assets is open to attack; usually, tangible assets only are included.)'

"Counsel for plaintiff lays much stress upon that part of the foregoing quotation reading as follow:

" 'If they do not, and if they might be disposed of without interference with the operation of the business, they may be grouped under "other" or "miscellaneous" assets. The practice of including the capitalized value of patents, trade-marks and good will in the fixed assets is open to attack; usually, tangible assets only are included.'

"She claims that the clause 'which are acquired for the purpose of carrying on a business' shows definitely that the commentator concluded that in the field of business, capital assets were never considered as independently of business. It is her contention that what the commentator meant in saying that stocks, bonds, etc., were classified as capital assets was that when such securities formed the assets of the business, they could be classed as fixed assets.

"Counsel for petitioner earnestly contends that the ordinary meaning of the words capital assets, not only as used in the dictionaries but as understood by accountants, does not include stocks, bonds, etc., except where used to control a subsidiary.

"He quotes the following from Professor Hatfield (Accounting, Its Principles and Problems, page 14):

" 'Difference of treatment has appeared in regard to investments in bonds and other securities. While the definition given above allows the inclusion of marketable securities among current assets, many accountants have excluded them, considering that only short-time items may be called current. It is, however, preferable to include such securities as Liberty bonds among current assets, not that they are already flowing along in a regular channel of business which will automatically arrive at cash (which is true of receivables, and, to some extent, even of merchandise) but because they are so easily convertible and may indeed be held as a substitute for cash. Indeed, the position of such se-

curities is not 'very different from items generally called cash. * * * But some accountants , exclude long-time securities from current assets even when they are easily marketable, and this is the rule of the Interstate Commerce Commission.

" 'Where the securities are' held, not as a more profitable substitute for cash but as in the case of stock in an affiliated company, in order to secure control or to promote friendly relations, the securities partake rather of the nature of fixed assets. In some balance sheets such securities are included under the general head of fixed assets, but there is an increasing tendency, despite the influence of the Interstate Commerce Commission, to establish an independent group entitled investments, or even more specifically, so as to distinguish them from ordinary investments, under some such title as Investments in Controlled and Subsidiary Companies.

" 'Fixed Assets:

" 'There is also divergence of opinion as to what constitutes fixed assets. In general they comprise those assets which are held for the purpose of conducting the business, in contradistinction to those assets which the proprietor holds for the purpose of converting into cash. They include real estate, buildings, machinery, and stock of other companies where this is held as a permanent investment for the purpose of controlling the activities of a subordinate company.' (See, also, Webster's New International Dictionary; .'A Statement of Accounting Principles' by

Sanders, Hatfield and Moore, c1938, p. 58; 'Introduction to Principles of Accounting,' by H. A. Finney, c1935, p. 167; 'The Balance Sheet,' by Charles B. Couchman, c1924, p. 30; 'Advanced Accounting' by Frank H. Streightoff, c1932, p. 3; 'Basic Accounting Principles,' by Saliers and Holmes, c1937, p. 599; 'Principles of Accounting' by Kohler and Morrison, c1931, p. 351; 'Fundamental Accounting' by G. M. Brett, c1928, p. 263; 'Principles of Accounting' by Prickett and Mikesell, c1937, p. 5; 'Accounting Terminology' by the American Institute of Accountants.) (Parenthesis ours.)

"In the brief filed on behalf of the Collector we find the following definition from the 'Accountant's Handbook', 2d Ed., page 1092:

" 'Capital assets is defined in the law as any property held by the taxpayer (whether connected with his trade or business) except stock in trade or property which would be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held primarily for sale, to customers in the ordinary course of business. Capital loss is defined as deductible loss resulting from the sale or exchange of capital assets.'

"This undoubtedly was the definition applied by the Board of Tax Appeals in deciding this case. The Board was also influenced by the definition given these words in federal income statutes which it seems have varied with the changes made from time to time in these statutes.

██ "In doing so, it is my view that the Board erred. I think that these words 'capital assets' should have been interpreted to mean assets of a permanent nature, or employed in carrying on a particular business or trade. Undoubtedly this is their ordinary meaning and it would also seem that it is the meaning applied to them by Professor Hatfield, an authority on accounting when he says:

" 'There is also divergence of opinion as to what constitutes fixed assets. In general they comprise those assets which are held for the purpose of conducting the business in contradistinction to those assets which the proprietor holds for the purpose of converting into cash. They include real estate, buildings, machinery, and stock of other companies where this is held as a permanent investment for the purpose of controlling the activities of a subordinate company.'

██ "It is my conclusion that these words did not include the bonds here involved because they undoubtedly were not permanent or fixed assets of the tax debtor used by her in any trade or business. On the contrary, they were securities acquired in a transaction entered into for profit and unconnected with a trade or business.

"I do not think the Collector had the power or authority to give to the words capital assets any meaning except their ordinary meaning, nor do I think that any interpretation by the Collector of these words could possibly have the effect of disallowing a deduction which under the statute was not denied. An administrative officer can interpret, but he can not change a statute. (Morrill v. Jones, 106 U.S. 466 [1 S.Ct. 423, 27 L.Ed. 267]; Burnet v. Chicago Portrait Company, 285 U.S. 1 [52 S.Ct. 275, 76 L.Ed. 587]; Ardsley Club v. Durey, Collector of Internal Revenue [D.C.], 40 F.2d 293; Langstaff v. Lucas [D.C.], 9 F.2d 691; Monroe Cider Vinegar & Fruit Company v. Riordan [2 Cir.], 280 F. 624.)

"It might be well to say at this point that I do not believe that the 'Instructions' prepared by the Collector and printed on the back of the form of tax return for 1934 included stocks and other securities acquired in a transaction entered into for profit. This instruction reads as follows:

" 'Losses on sales of stocks and securities or other capital assets are deductible only to the extent of gains from the sale of such assets.'

"My interpretation of these words is that losses on stocks and securities which are capital assets are deductible only to the extent of gains from the sale of such assets.

"Stocks and securities, as has been seen by the various authorities quoted, may under certain conditions be capital assets. When they are, as I construe said instruction, losses from the sale thereof are deductible only to the extent of gains from the sale of such assets. When they are not, the loss from the sale is deductible without limitation.

██ "It is my conclusion that petitioner is entitled to the deduction for losses claimed by her under the provisions of

Section 9(e) (2) of Act 21 of 1934, the bonds in question not being capital assets within the meaning of said act; that the words 'capital assets' should be given their usual and ordinary meaning; that is to say, permanent or fixed assets used in a trade or business and not securities acquired by a taxpayer in a transaction entered into for profit, unconnected with a trade or business; that the instruction or regulation issued by the Collector of Revenue and printed on the back of the form of income tax return for 1934 did not include stocks and other securities acquired in a transaction entered into for profit, unconnected with a trade or business, and that if it was intended to include such stocks and other securities, the Collector of Revenue exceeded the authority given her by law, as she was vested with no right other than to interpret and administer the law as enacted by the Legislature.

■ "With due respect to the ruling of the Board of Tax Appeals, I am of the opinion that it erred in its conclusion that the term 'capital assets' had acquired a technical meaning which includes securities acquired in a transaction entered into for profit, unconnected with a trade or business. At best the question is a doubtful one, and being so, it is my view that the doubt should be resolved in favor of the taxpayer." United States v. Maryland Casualty Co., 7 Cir., 49 F.2d 556; State v. Wesson Oil & Snowdrift Co., Inc., 180 La. 823, 157 So. 728.

Counsel for the Collector have attacked the soundness of the district judge's opinion on the ground that under the federal revenue act, as well as other state revenue statutes and court decisions thereon, a scientific and technical concept of the term "capital assets" has arisen which is distinctly different from that given to it by the dictionary and accountants. The fallacy in this argument is that it fails to take into consideration the fact that the scientific or technical meaning of the term "capital assets," which has been developed by the courts, is based upon the provisions of statutes and, therefore, apart from them, it has no meaning. For instance, the federal jurisprudence is founded on specific statutory provisions of the federal income tax law where the term "capital assets" is defined. It appears that under the United States Revenue Acts from 1913 to 1921 (October 3, 1913, c. 16, Section II, 38 Stat. 166; Sept. 8, 1916, c. 463, Title 1, 39 Stat. 756; Oct. 3, 1917, c. 63, Title 1, 40 Stat. 300; Feb. [24] 1919, c. 18, Title II, 40 Stat. 1058), the question of what constituted "capital assets" would not arise. In 1921 (Nov. 23, 1921, c. 136, Title II, 42 Stat. 227), the term "capital assets" was defined in the Revenue Act and certain provisions were made for the specific treatment of losses and gains from sales or exchange of "capital assets," for tax purposes. Under the Revenue Acts from 1921 through 1932 (Nov. 23, 1921, c. 136, Title II, 42 Stat. 227; June 2, 1924, c. 234, Title II, 43 Stat. 254; Feb. 26, 1926, c. 27, Title II, 44 Stat. 10; May 29, 1928, c. 852, Title I, 45 Stat. 795; June 9, 1932, c. 209, Title I, 47 Stat. 173, 26 U.S.C.A. Int.Rev.Acts, pages 2 et seq., 145 et seq., 352 et seq., and 482 et seq.),

"capital assets" were defined as property acquired and held by the taxpayer for profit or investment for more than two years (whether or not connected with his trade or business). Under that law, the bonds held by petitioner herein might or might not have been considered "capital assets" depending on whether or not they had been held for more than two years. In 1934 (May 10, 1934, c. 277, 48 Stat. 683, 26 U.S.C.A. Int.Rev.Acts, page 707, the definition of "capital assets" was changed so as to eliminate the provision that such·property must be held for more than two years, in order to come within the definition, but the revenue statute by Section 117(a) provided that, in the case of a taxpayer other than a corporation, only certain percentages of the gains and losses would be recognized upon the sale or exchange of "capital assets." For instance, 100 percent would be recognized, if the capital assets had been held for not more than one year and 80 percent if they had been held for more than one year but not more than two years, etc.

 The question arises in connection with the Collector's contention that "capital assets" had received a technical or scientific meaning for tax purposes whether or not the Louisiana legislators intended to adopt the definition or meaning which had been provided in the federal Revenue Acts of 1921 through 1932 or the Revenue Act of 1934. As the United States statute was approved in May, 1934, and the Louisiana act was approved in July 1934, it might be said that it was the intention of the Legislature to adopt the latter. If that assumption is to be made,

it could be said with equal force and logic that the Legislature also intended to adopt the percentage basis of calculation recognized in Section 117(a).

The pursuit of the legislative intent, through assumption, in the absence of an express definition would lead to great confusion, because it would be exceedingly difficult to determine the status of a corporation as a taxpayer with reference to this subject matter, as section 117(a) does. not apply to corporations. If one part of the federal act or the statute of another State can be held to be adopted by our Legislature without reciting the provision. in the act, then other parts can be likewise declared to have been adopted. The policy of this State under Article 3, Section 18 of the Constitution of Louisiana of 1921, is that the Legislature shall never adopt a. system or code of laws only by general reference thereto, but in all cases shall recite at length the provisions of the law enacted. Nor could only that part which is favorable to the State be considered. adopted and the part favorable to the taxpayer be ignored or eliminated. So, we are not at liberty to indulge freely in assumptions in determining whether the Legislature of 1934 in enacting the initial income tax law of this State intended to adopt the definition of "capital assets" as: set forth in the federal act or to adopt the definition thereof set forth in some other State revenue statute, without any definition whatsoever in our own Act of 1934 to. guide us.

 The Legislature of this State was. free to make its own definition of "capital.

assets" and elected to do so by Act 143 of 1936, amending Section 9(j) of Act 21 of 1934, which reads as follows:

" 'Capital assets' means all property of the taxpayer (whether or not connected with his trade or business) except stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

Thus showing that the members of the Legislature of 1936 considered the Revenue Act of 1934 was different in this respect or, at least, uncertain and doubtful.

 Counsel for the Collector has cited authorities to establish that stocks and bonds may in some cases be considered "capital assets." It is conceded that where stocks and bonds are used as a part of a business undertaking, they become "capital assets", for example, where the stock of a subsidiary corporation is held for the purpose of controlling it, the stock thus held becomes fixed and is no longer a current or liquid asset.

In the case of Hays, Collector v. Gauley, Mountain Coal Company, 247 U.S. 189, 38 S.Ct. 470, 62 L.Ed. 1061, the court did not discuss the question of whether the shares of stock constituted "capital assets" but took for granted what the parties apparently conceded. The citation from 12 Corpus Juris Secundum, Capital, page 1130, is a statement of the law based upon statutory provisions, i. e., the Income Tax Laws of the United States,

where the term "capital assets" has been defined.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., does not take part.