**In re VOLPE ENTERPRISES, INC., Debtor.**

**Patrick A. BARRY, Trustee, Plaintiff.**

**v.**

**BUNTCO, INC., Defendant.**

**In re M & E ENTERPRISES, INC., Debtor.**

**Patrick A. BARRY, Trustee,**

**v.**

**BUNTCO, INC., Defendant.**

**Bankruptcy Nos. 82–00628–BKC–JAG, 84–00629–BKC–JAG.**
**Adv. Nos. 84–0132–BKC–JAG, 84–0134–BKC–JAG–A.**

United States Bankruptcy Court, S.D. Florida.

June 22, 1984.

Julia B. Rose, Fort Lauderdale, Fla., English, McCaughan & O'Bryan, for trustee.

Patrick A. Barry, English, McCaughan & O'Bryan, Fort Lauderdale, Fla., Trustee.

Robert E. Murdoch, Fleming, O'Bryan & Fleming, Fort Lauderdale, Fla., for Buntco.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

These two consolidated adversary proceedings were filed by the trustee to determine the validity, priority and extent of the lien of the creditor Buntco. The parties previously agreed to the sale of the property in question and it is their respective rights in the proceeds which are now being determined.

The two debtors involved, Volpe Enterprises, Inc. and M & E Enterprises, Inc. are owned by the same shareholder. They purchased two Midas Muffler shops, including the franchises, from Buntco, giving a security interest in assets of the businesses to secure payment of the purchase price, and the claim in question arises from that transaction. The trustee asserts that the security agreement did not cover part of the collateral which the creditor claims, and that the financing statement was insufficient to perfect Buntco's security interest in another part of the collateral. This court agrees with the trustee's contentions.

The evidence in this case consists of documents which were introduced and a stipulation of facts entered into by the parties (Case No. 84–0132–BKC–JAG–A, C.P. No. 9). There are four documents on which Buntco bases its claim to secured status: a Sales Agreement (Plaintiff's Exhibit No. 1), a Security Agreement (Plaintiff's Exhibit No. 2), a financing statement as to M & E (Plaintiff's Exhibit No. 4) and a financing statement as to Volpe (Plaintiff's Exhibit No. 5). Based on these documents together, Buntco asserts a perfected security interest in all the inventory and equipment of the two debtors.

The security interest, which is between Buntco as creditor and Volpe and M & E jointly, as debtor, provides for a security interest in the assets shown on attached schedules. The schedules list vehicles and equipment. Each of the financing statements lists the collateral as "All fixed assets and inventory at the foregoing address, together with the Midas franchise".

Although the Security Agreement executed by Volpe and M & E does not extend to inventory, Buntco asserts a security interest in inventory based on the Sales Agreement. Usually a security interest is not enforceable without a "security agreement which contains a description of the collateral" and which is signed by the debtor, § 679.203(1)(b), Fla.Stats. Many courts have concluded, however, that the

security agreement referred to in this section need not be embodied in a single, written document entitled "security agreement". Courts have found that various combinations of documents, and, sometimes, the intentions of the parties as demonstrated through parol evidence, have created enforceable security agreements. Eg., *In re Fibre Glass Boat Corp.*, 324 F.Supp. 1054 (S.D.Fla.1971), aff'd. 448 F.2d 781 (5th Cir.1971).

The biggest obstacle to using this technique to find a security interest in inventory in favor of Buntco is that the evidence does not establish that the Sales Agreement was even part of the transaction between the debtors and Buntco. The purchaser in the Sales Agreement is Volpe Automotive, Inc. It appears that the agreement was drafted with the intention that an individual execute the agreement and assign it to a corporation to be formed. As it now stands, the agreement is internally inconsistent. It was *not* entered into or executed on behalf of an individual, but by the "president" of Volpe Automotive, Inc., on behalf of Volpe Automotive, Inc. That individual is now the shareholder of the two debtors. Volpe Automotive, Inc. never existed as a corporate entity, nor did it, or the individual, ever assign the sales contract to the debtors. Instead, the debtors signed a note (Plaintiff's Exhibit No. 3) and the Security Agreement and proceeded to purchase what "Volpe Automotive, Inc.", had agreed to buy. Without more, the court cannot find that Volpe Automotive was the debtors' legal predecessor, or that they are bound by the signature on the Sales Agreement.

But there is an additional obstacle to construing the Sales Agreement as the security agreement, or a part of the security agreement. Another prerequisite for enforceability of a security agreement is attachment, and a security agreement cannot attach until there is agreement that it attach, § 679.204, Fla.Stats. The Sales Agreement in this case is insufficient to demonstrate a present intention that a security interest attach to inventory. The agreement provides for a future purchase

and sale, at which time purchaser was to give to seller "a chattel mortgage encumbering all of the items being conveyed as contemplated by this Agreement". Because a security agreement/chattel mortgage was in fact given at a future time, the court finds that it abrogated any intent of the parties expressed in the Sales Agreement that a different security agreement attach, if such intent there was. From the evidence, the court can only conclude that, if the debtors felt the Sales Contract to be binding on them, the parties changed the designated collateral prior to executing the Security Agreement. Therefore Buntco has no security interest in inventory.

■ The next point to be decided is whether or not the financing statement was sufficient to perfect Buntco's security interest in the vehicles and equipment. Perfection is necessary to preserve the secured creditor's interest against competing third parties, which includes the trustee in bankruptcy. At issue in the case at bar is the creditor's compliance with the provision in § 679.402(1), Fla.Stats., that a financing statement contain "a statement indicating the types, or describing the items, of collateral." On the schedules attached to the security agreement here, the equipment was itemized by type (e.g. "bench grinder") and was grouped under the categories of "signs", "brake equipment", "alignment equipment", and "shop equipment", in addition to the vehicles. The financing statement referred to "all fixed assets".

There are numerous cases in United States jurisdictions, representing a variety of views, on the question of the amount of detail required in the financing statement. There are also quite a few cases which refer to security interests in a debtor's "fixed" assets, e.g. *Chemical Bank v. Slaner, In re Duplan Corp.*, 591 F.2d 139 (2d Cir.1978); *In re Vecco Construction Industries, Inc.*, 9 B.R. 866 (Bkcy.Ct.E.D. Va.1981); *First State Bank of Corpus Christi v. Del Tex Corp., In re Del Tex Corp.*, 32 B.R. 403 (Bkcy.Ct.W.D.Tex.1983), but the court has found no case dealing

with the use of that specific term in the financing statement.

The differences in the cases may reflect different court attitudes to the concept of notice filing which is carried over into an interpretation of UCC 9–402. In McDonnell, *A Reevaluation of Public Notice Under Article 9 of the Uniform Commercial Code*, 1A Bender's UCC Serv. § 6C.05[7][c] and [d] (P. Coogan & J. McDonnell ed.1984) Professor Julian McDonnell points out that the language of § 9–402, quoted above from the Florida Statutes, suggests that an identification type of description is *not* required. Thus § 9–110 which states: "... any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described...." (§ 679.110, Fla.Stats.), would only apply if the secured creditor elected to "describe the items" rather than "indicate the types" under ¶ 9–402. McDonnell also concludes that Comment 1 of the Uniform Commercial Code drafters is inaccurate and misleading in its phrasing by stating that one requirement for a financing statement is "a *description* of the collateral by type or item." (Emphasis added)

The reason for the absence of a need for detail is that the purpose of the financing statement is only to alert a third party to the need for further investigation, not to provide the detailed identification which is required of a security agreement, *United States v. Crittenden*, 600 F.2d 478 (5th Cir.1979); *American Restaurant Supply Co. v. Wilson*, 371 So.2d 489 (Fla.App. 1979). As explained in the Florida Comments to § 679.402:

> Under the "notice" filing system the records are intended to give notice that a security agreement between the parties exists or may come into existence. The inquiring party may then resort to the parties themselves to ascertain in detail the financial relationship between the debtor and the secured party....

This system is then contrasted to the document filing system where the security agreement itself is filed, necessitating a new filing for every change in the security agreement. Thus, the commercial convenience being served is primarily that of the secured party, not the third parties who will be doing the investigating.

On the other hand, despite the election in the UCC to utilize a notice filing system, § 9–402 makes clear that a single all-encompassing phrase to cover all of the debtor's assets is not sufficient. The apparent purpose of the section is to result in financing statements which will permit ease of filing, but still limit the investigations a third party must make, McDonnell, *supra*. There have been many cases holding that a particular designation of collateral was too broad. E.g. *In re Mansour*, 29 B.R. 114 (Bkcy.Ct.S.D.Fla.1983) where the term "all other personal property owned by the debtor" was held to be insufficient to perfect a security interest in good will and other intangibles. But to the extent that the results in these cases are based on a perceived need for a very detailed description, as discussed above, they may not be following the middle ground which seems to be mandated by 9–402. The difficulty is to find where that middle ground lies with each particular case.

■ Analyzing the term "fixed asset", it is apparent that the term is narrower than the all-encompassing "asset". However, it is not a "type" of collateral which does much to limit the investigation a third party must make. A substantial number of Florida cases use the term "fixed assets", but the court has not found any case which defines it.

Black's Law Dictionary (5th ed.) defines "fixed assets":

> Plant assets. Property used in operating a business which will not be consumed or converted into cash or its equivalent during the current accounting period; *e.g.* machinery, land, buildings. Contrasted with liquid assets; *e.g.* cash, securities.

Citing *Rathborne v. Collector of Revenue*, 200 So. 149, 196 La. 795 (1941), 17 Words and Phrases 161 defines the term as follows:

"Fixed assets" in general comprise those assets which are held for the purpose of conducting a business, in contradistinction to those assets which the proprietor holds for the purpose of converting into cash, and they include real estate, buildings, machinery, and stock of other companies where this is held as a permanent investment for the purpose of controlling the activities of a subordinate company. These definitions demonstrate that the term is, if not an accounting term of art, at least a term which is defined by the debtor's use of the collateral rather than by the nature of the collateral itself. This alone might not be dispositive, however. The terms "equipment" and "inventory" are classifications used by the UCC. McDonnell argues persuasively that even though a few courts have held to the contrary, designation according to Article 9 category should be adequate for purposes of § 9–402. Yet the categories of "inventory" and "equipment" are also primarily differentiated by the use and intent of the debtor. In fact, the term "fixed assets" is used by the drafters of the UCC in Comment 3 to § 9–109 to help distinguish when goods used in business are equipment, and when inventory, according to their type of use by the debtor. Therefore, the fact that particular fixed assets are identifiable only by an examination of the debtor's operation is not enough to disqualify "fixed assets" as a sufficient term for use on a financing statement.

Ultimately this court concludes that "fixed assets" is inadequate to satisfy § 679.402(1) because it is too broad a term, and too much like the all-encompassing terms such as "all debtor's assets" which § 9–402 proscribes through the requirement that the financing statement at least indicate the types of collateral. In fact, it is so broad that it includes real as well as personal property, although of course the former would not be covered by an Article 9 security agreement. The question is an extremely close one. However, eliminating the use of this particular term from financing statements would not materially increase the work for secured parties to achieve perfection. It is also arguable that in a contest between the secured creditor and third parties, the greater burden should fall on the secured party who drafted the documents, cf. *National Ropes, Inc. v. National Diving Service*, 513 F.2d 53 (5th Cir.1975). If it seems over-technical to deem this term insufficient, the quarrel is with the UCC drafters and the legislators who elected notice filing, while at the same time requiring some degree of characterization of the collateral.

As a result, Buntco's claim is unsecured.

Pursuant to B.R. 9021(a), a Final Judgment incorporating these Findings and Conclusions is being entered this date.