In re ALL AMERICAN HOLDING CORPORATION, Debtor.

ELGIN STATE BANK, Plaintiff,

v.

S. Z. BENNETT et al., Defendants.

Bankruptcy No. 80–01278–BKC–TCB.
Adv. No. 80–0382–BKC–TCB–A.

United States Bankruptcy Court,
S. D. Florida.

March 5, 1981.

A. P. Walter, Jr., Coral Gables, Fla., for debtors/defendants.

William Roemelmeyer, Miami, Fla., trustee.

James P. Paul, Miami, Fla., for trustee/plaintiff.

Francis L. Carter, Miami, Fla., for All American.

Neil J. Berman, Miami, Fla., for plaintiff.

David W. Trench, Miami, Fla., for defendants.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The plaintiff, Elgin State Bank, seeks to impress its second mortgage lien upon $80,-000 which is before the court as the result of liquidation of this chapter 11 debtor's property. (C.P. No. 2) The holders of the first mortgage lien, the trustees of a Chapter X debtor, G.A.C. Corporation, acknowledge that their lien has been fully satisfied. (C.P. No. 12). The owner of the property, All American Holding Corporation, claims all of the $80,000. (C.P. No. 13) The stakeholders of the $80,000 are before the court and all parties agree that this is the appropriate forum to determine the distribution of the fund. (C.P. No. 11). The matter was tried before me on January 22 and the dispositive facts were all stipulated.

The real property in question was foreclosed in the State court, but the filing of All American's bankruptcy petition stayed the foreclosure sale which had been scheduled for October 20 1980. In October, the first mortgagee, G.A.C. came to this court for relief from the stay and obtained instead "adequate protection" under 11 U.S.C. § 361 when All American posted a bond of $60,000 upon the following condition:

"Plaintiffs may, from time to time, apply, upon notice and hearing, for approval of this Court, to draw upon said deposit for the purpose of meeting cash operating shortfalls, *and paying such other losses, damages, or costs incurred by Plaintiffs during the period the foreclosure sale of the River Ranch property remains stayed, as may properly fall within the scope of adequate protection within the meaning of 11 U.S.C. § 361*; (b) the unused portion, if any, of said deposit shall be promptly refunded to Defendant..." Supplemental Order re Modification of Stay, October 23, 1980, C.P. No. 17 in Adversary File No. 02178.

The receiver in the State court foreclosure has since been permitted to withdraw all but $26,776 of that $60,000 to maintain the property. He subsequently accumulated a cash surplus of $48,000 and $5,000 in receivables from his operation of the property. The total of these sums is presently uncertain because of a possible insurance premium refund and because the receivables have not yet been collected. However, the parties have agreed to refer to the total of the three items as $80,000 with the

understanding that the precise adjustments will be made between the parties as soon as that becomes possible.

All American's effort to salvage the property was unsuccessful. The foreclosure sale was held on December 1, 1980 and produced $1.9 million. The first mortgagee, G.A.C. was satisfied in full, $1,857,829. Documentary stamps cost $7,600. The second mortgagee, Elgin received the balance $34,571. Elgin's lien, which was reduced to judgment in the foreclosure, exceeds the sum in dispute here.

Elgin was not a party to the proceeding which led to the deposit of $60,000 nor is Elgin explicitly protected by that deposit. Elgin concedes that its mortgage lien extends only to the real property. It argues, however, that it received $39,267 less from the foreclosure sale as a direct result of the 53 day postponement of that sale which had been obtained by All American in return for its deposit of the $60,000. Elgin claims that sum under the doctrine of marshaling.

I accept this calculation, which is not disputed by All American. This sum is the amount by which the claim of the first mortgagee, G.A.C., increased during the 53 day extension.

■ The equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds. *Meyer v. United States,* 375 U.S. 233, 236, 84 S.Ct. 318, 320, 11 L.Ed.2d 293 (1963). Elgin's position is that the doctrine is applicable here and if G.A.C. had been required to seek satisfaction first from the $60,000 deposit (which protected only G.A.C.), it would have recovered $39,267, which represents the amount by which its claim increased during the 53 days the stay was extended and, therefore, its damages as a result of that extension. Had G.A.C. done so, Elgin's recovery would have been increased in that same amount.

■ All American argues that since G.A.C. received payment in full from the delayed foreclosure sale, it sustained no loss. Therefore, the deposit may not be charged. To accept this contention would defeat Elgin's equitable right to marshal the assets. It would also impose on Elgin, an innocent party, the loss resulting from the delay sought by All American. As between these two parties, that loss should fall on All American. I do not believe that the fact that G.A.C. has been paid precludes marshaling. I agree with Elgin that it should receive the benefit of $39,627 from that deposit.

■ The remainder of the $60,000 deposit ($20,733) should be returned to All American, because although $33,224 was withdrawn from the deposit by the State court receiver to meet operating expenses, it is now clear that he has a net operating profit of about $53,000. If equity regards that done which should have been done (the approach which Elgin has successfully urged), it follows that All American should not be denied its refund because of a previous temporary advance to the receiver. Accord, *Central Main Power Co. v. Federal Power Commission,* 5 Cir. 1965, 345 F.2d 875, 876; *Jacksonville Port Authority v. Adams,* D.C. Cir.1977, 556 F.2d 52, 56.

These calculations leave a net operating profit from the receiver's operation of $20,000 more or less. That sum is clearly subject to Elgin's lien.

To recapitulate—of the $80,000 total in dispute, All American is entitled to $20,733 and Elgin is entitled to the balance, $59,267 more or less. No other party claims any interest in these funds. Greenberg, Traurig, who hold the balance of the $60,000 deposit in escrow ($26,776) shall pay $20,733 of that sum to All American and the balance to Elgin. John Cranford, the State court receiver, who holds $53,000 more or less shall pay all that sum to Elgin.

As is required by B.R. 921(a) a separate judgment will be submitted by the parties in accordance with this opinion. Each party shall bear its own costs.