In the Matter of The KIDS STOP OF AMERICA, INC., Debtor.

Bankruptcy No. 85–2680.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 29, 1986.

Guy Burns, Tampa, Fla., for debtor—The Kids Stop of America.

Paul Straske, Tampa, Fla., for Creditors Committee.

Robert A. Soriano, Tampa, Fla., for Doe-Spun, Inc.

James L. Murray, Malvern, Pa., for Mercantile Bank of Canada.

## ORDER ON AMENDED MOTION TO VALUE COLLATERAL OF DOE SPUN, INC. AND TO MODIFY ORDER AFFORDING ADEQUATE PROTECTION TO DOE SPUN, INC., AND ORDER ON EMERGENCY MOTION FOR RELIEF FROM STAY FOR FAILURE TO COMPLY WITH COURT ORDERS

ALEXANDER L. PASKAY, Chief Judge.

THE MATTERS under consideration in this Chapter 11 case are an Amended Motion to Value Collateral of Doe Spun, Inc., and to Modify Order Affording Adequate Protection to Doe Spun, Inc., filed by the Kids Stop of America, Inc. (KSA), the Debtor-in-Possession in the above-captioned case, and an Emergency Motion for Relief From Stay for Failure to Comply With Court Orders, filed by Doe Spun, Inc. (Doe Spun). The parties have stipulated that KSA has filed a Complaint to Determine the Validity, Extent, or Priority of a Lien asserted by Doe Spun, and that the issues raised in the Complaint are essentially the same as those raised in the Motions and can be heard at the same time. The matters are submitted for this Court's consideration on stipulated facts and on testimony which reveal the following:

KSA, a Delaware corporation, was formed in August, 1984 for the purpose of acquiring from Doe Spun and its related subsidiaries, Calabash Fashions, Ltd. (Calabash) and the Kids Stop, Inc., all of the inventory and assets connected with the operation of twenty-seven retail children's clothing stores. Subsequent to its formation KSA entered into an Asset Purchase Agreement with Doe Spun, Calabash, and the Kids Stop, Inc. as well as an inventory supply agreement in which Doe Spun and Calabash agreed to sell KSA inventory. KSA and Doe Spun also entered into a security agreement dated August 20, 1984, pursuant to which KSA granted Doe Spun a security interest in KSA's inventory as collateral for KSA's obligations under the inventory supply agreement and for a $1,300,000 promissory note given by KSA to Doe Spun for the purchase of the assets. Financing statements were subsequently executed and properly filed in the eleven states where KSA was then conducting business.

Between August, 1984 and February, 1985, certain disputes had arisen in connection with the Asset Purchase Agreement, the inventory supply agreement, and the promissory note, and on February 8, 1985, the parties entered into a settlement agreement in order to restructure KSA's obligations to Doe Spun and to allow KSA to obtain new financing. The settlement agreement provided that KSA would pay Doe Spun in excess of $440,000 and would execute a new promissory note in the principal amount of $800,000.

The settlement agreement also included provisions relevant to the security interest given by KSA to Doe Spun. Paragraph 3(b) provides:

> The parties acknowledge and agree that the inventory supply agreement shall be terminated effective as of the closing date. The parties further agree that the security agreement effective August 20, 1984 shall be terminated effective as of the closing date. Doe Spun and/or Calabash shall execute and deliver to KSA at closing all documents reasonably requested by KSA and necessary to release any security interest held by Doe Spun and/or Calabash in the KSA inventory.

In addition, Paragraph 3(d) of the settlement agreement provides in relevant part:

> As additional security [for KSA's obligations to Doe Spun under the settlement agreement and new promissory note executed in accordance therewith] Doe Spun shall be granted a security interest in KSA's inventory; provided, that such security interest shall be second and subordinate to a security interest in such inventory granted by KSA to Mercantile Bank of Canada in the amount of one million, five-hundred thousand, and 00/100 ($1,500,000.00). Doe

Spun shall be solely responsible for payment of any cost related to creation and perfection of such security interest, including but not limited to filing fees.

Unfortunately, KSA and Doe Spun did not execute the security agreement as contemplated in Paragraph 3(d) of the settlement agreement. The only related documents which were executed were UCC–3 amendments which refer to Doe Spun's original financing statement and which subordinate Doe Spun's interest to a security interest granted to Mercantile Canada Corporation and the Mercantile Bank of Canada (Mercantile), the entity which provided additional financing to KSA. It is without dispute, however, that even though a second security agreement was never executed, KSA intended to give Doe Spun a security interest in KSA's inventory subordinate only to Mercantile.

Between March, 1985 and September 24, 1985, when KSA filed its Petition for Relief under Chapter 11 in this Court, KSA closed several of its retail stores and opened others, including stores in Michigan, Wisconsin, and Illinois, states in which KSA had not done business before and in which Doe Spun had not filed financing statements. KSA also opened a new store in Illinois and one in Michigan in November, 1985. Doe Spun asserts that it was never told that KSA was going to open the stores in Michigan, Wisconsin, and Illinois; however, it is clear that the goods ordered from Doe Spun were invoiced with a notation as to the ultimate destination of the goods, and the uncontroverted evidence is that Doe Spun knew that additional stores were to be opened and that Doe Spun invoiced goods that were shipped to these three states.

On November 26, 1985, pursuant to an Amended Emergency Motion to Authorize Use of Cash Collateral, filed by KSA, this Court entered an order authorizing use of cash collateral and granting Doe Spun, Inc. adequate protection. In that order, this Court found, in part, that:

> KSA acknowledges that Doe Spun has a valid and perfected security interest in the inventory of KSA, which security interest is subordinate only to a lien in favor of Mercantile Canada Corporation.

As part of the adequate protection for Doe Spun's security interest, Doe Spun was given a replacement lien on all post-petition inventory, subordinate only to the lien of Mercantile Canada Corporation. Furthermore, the order provided that:

> KSA be, and it is hereby directed, to execute and deliver to Doe Spun such agreements, financing statements, instruments, and other documents as Doe Spun may request to evidence, confirm, validate, or perfect the security interest and liens authorized by this order, provided, however, that Doe Spun shall not be required to file financing statements in any jurisdiction or take any other actions in order to validate and perfect the security interest and liens granted to it hereunder.

The threshold issue to be decided is whether Doe Spun has a valid, perfected security interest in KSA's inventory. KSA contends that the settlement agreement terminated Doe Spun's existing security interest but failed to create a new security interest in the inventory. Additionally, KSA asserts that because Doe Spun failed to file financing statements in Michigan, Wisconsin, and Illinois, Doe Spun is unperfected as to collateral in those states.

On the other hand, Doe Spun maintains that the settlement agreement executed in February, 1985 was sufficient to create an enforceable security interest in its favor because the parties intended the settlement agreement to give Doe Spun such an interest and the settlement agreement contained all the essential terms in a security agreement.

The necessary elements of an enforceable security agreement are that it be signed by the debtor, it contain a description of the collateral, the debtor have rights in the collateral, and value be given. Fla.Stat.Ann. 679.203(1)(b) (West 1986). Courts construing this Statute have held that the security agreement need not be embodied in a single, written document, but

that "various combinations of documents, and, sometimes, the intention of the parties as demonstrated through parol evidence have created enforceable security agreements." *In re Volpe Enterprises, Inc.*, 42 B.R. 90 (Bankr.S.D.Fla.1984); *See also In re Fiberglass Boat Corp.*, 324 F.Supp. 1054 (S.D.Fla.1971), aff'd 448 F.2d 781 (5th Cir. 1971).

■ This Court is satisfied that the settlement agreement of February 8, 1984 created a security interest for Doe Spun in KSA's inventory. The settlement agreement contained all the elements delineated by Fla.Stat. § 679.203(1)(b), and Mr. David Greenlees, President of KSA, conceded at trial that when the settlement agreement was signed, KSA intended to give Doe Spun a security interest in KSA's inventory subordinate only to Mercantile.

■ Even if the settlement agreement did not create a security interest in favor of Doe Spun, KSA is now estopped from denying the validity of Doe Spun's security interest. In numerous post-petition pleadings by KSA, KSA admitted that Doe Spun was a secured creditor of KSA and had a perfected lien on all its inventory. For example, by its motion to remove creditors from the Creditor's Committee, and this Court's January 24, 1986 order granting said motion, KSA had Stanley Oremland, an officer of Doe Spun and Calabash Fashions, removed from the unsecured Creditor's Committee because Doe Spun was "holding a claim secured by a second position perfected lien on inventory of the Debtor ... [and] holds interests affirmatively adverse to those of general creditors." Also, in its Emergency Motion to Authorize Use of Cash Collateral, filed October 10, 1985, KSA conceded that Doe Spun occupied a second priority secured position and offered to make adequate protection payments to Doe Spun. This Court's corresponding order to that motion, entered November 26, 1985, recited KSA's acknowledgement of Doe Spun's secured position, granted Doe Spun a replacement lien on all KSA's post-petition inventory, and expressly provided that:

Doe Spun shall not be required to file financing statements in any jurisdiction or take any other action in order to validate and perfect the security interest and liens granted to it hereunder.

Furthermore, and perhaps most significantly, on March 7, 1986, KSA filed an Emergency Motion for Order Authorizing Debtor to Obtain Secured Credit, and asked for authority to borrow $175,000 from Mercantile Canada Corporation and to grant to Mercantile a super-priority security interest. KSA represented to this Court at that time that Doe Spun was fully secured, and that to allow KSA to incur a super-priority secured debt would not impair Doe Spun's secured status. Based in part on these representations, this Court granted KSA's motion and authorized KSA to borrow $175,000 from Mercantile and to give Mercantile a super-priority lien on its inventory. After reaping the benefits of asserting Doe Spun's secured status, KSA, at this time, after many stores have been closed and its inventory has been drastically reduced, leaving very little for unsecured creditors, is estopped from denying Doe Spun's secured status.

Since it has been determined that Doe Spun has a security interest in KSA's inventory, based on the settlement agreement and on KSA's course of conduct throughout this Chapter 11 case, this Court must now decide whether and to what extent Doe Spun's security interest is perfected. There is no doubt that Doe Spun's security interest is perfected in those jurisdictions where it filed financing statements and amendments to financing statements; however, the question to be resolved is whether Doe Spun's security interest is perfected as to inventory located in Michigan, Wisconsin, and Illinois. KSA argues that because Doe Spun never prepared or recorded any security agreement or financing statement in those three states, Doe Spun is not perfected as to inventory located there.

Doe Spun argues that even though Doe Spun did not file the documents ordinarily required to perfect a security interest in

those three states, Doe Spun is perfected as to any inventory brought into those states within four months of this Court's November 26, 1985 order. The argument propounded by Doe Spun relies on § 9–103(1)(d) of the Uniform Commercial Code, as adopted in Illinois (Ill.Rev.Stat. ch. 26 § 9–103(1)(d)) Michigan (Mich.Comp.Laws § 440.9103(1)(d)), and Wisconsin (Wis.Stat. § 409.103(1)(d)), which provides that when goods subject to a perfected security interest in one jurisdiction are brought into the state, the security interest remains perfected if within four months after the collateral is brought into the state it becomes perfected in the state.

■ By virtue of the Statutes cited above and this Court's November 26, 1985 order, which granted Doe Spun a perfected replacement lien on all KSA's post-petition inventory, this Court concludes that Doe Spun has a perfected security interest in any inventory moved from Florida into Michigan, Wisconsin, or Illinois within the four months prior to November 26, 1985. Because all of the stores except for the one in Beloit, Wisconsin, which was opened in May, 1985, were opened within four months of the November 26, 1985 order, Doe Spun was perfected as to all the inventory in those stores. Furthermore, Doe Spun was perfected as to any inventory brought into the Beloit store after July 26, 1985, the start of the four month grace period.

Based on the foregoing, this Court is satisfied that at the time of the filing of the petition on September 24, 1986, Doe Spun had a perfected security interest in all the inventory of KSA except that inventory that was taken into the Beloit, Wisconsin store prior to July 26, 1985. Although there is no evidence in this record as to the value of the collateral located at that store during this time period, that gap is not fatal to Doe Spun's claim. As Doe Spun argues, Doe Spun is entitled to invoke the equitable doctrine of marshalling and to require Mercantile, the first position secured creditor that is validly perfected in Wisconsin and all other jurisdictions where

KSA had inventory, to exhaust its collateral in Beloit, where Doe Spun was not continuously perfected, before resorting to its other collateral to which Doe Spun is also perfected. *See, i.e., In re All American Holding Corp.*, 10 B.R. 71 (Bankr.S.D. Fla.1981).

The remaining issue to be resolved is the value of the inventory in which Doe Spun has a security interest. The uncontroverted evidence submitted by KSA was that at the time KSA filed its petition under Chapter 11 in this Court, its inventory had a going concern value of $4,664,000.00, a cost value of $2,332,000.00, and an orderly liquidation value of approximately $1,300,000.00 to $1,400,000.00. KSA argues that only the net realized value, after its expenses, should be considered in valuing Doe Spun's secured claim. Doe Spun argues that because KSA has had the use of Doe Spun's collateral throughout this Chapter 11 case and sold most of this collateral on a going concern basis, the going concern value is the appropriate value to be used.

■ The Bankruptcy Code offers no bright line standards for valuation of collateral, but instead provides that value is to be determined on a case by case basis in light of the purpose of valuation. 11 U.S.C. § 506(a). Case law dealing with valuation of collateral for purposing of establishing whether a claim is secured or unsecured sets forth an equitable approach in determining value. *See 2 Collier on Bankruptcy*, § 506.04 (1986) and cases cited therein. One of the primary factors to be considered in valuation is whether the subject property is to be used and retained by the debtor or whether the property is to be disposed of. If there is to be a disposition of the property, then the valuation of the collateral should be based on the funds received from the disposition as long as the disposition was commercially reasonable. *See In re Walkup*, 28 B.R. 225 (Bankr.N.D. Ind.1983). On the other hand, if the collateral is to be retained and used by the debtor, such as inventory type collateral in possession of an active Chapter 11 debtor, collateral should be valued as part of the

going concern. *Matter of Q.P.L. Components, Inc.,* 20 B.R. 342 (Bankr.E.D.N.Y. 1982).

While it is true that KSA has had the use of Doe Spun's collateral throughout this case and has sold some of it on a going concern basis, the going concern value is not the most appropriate standard to apply under the circumstances of this case. Because KSA has had to close the majority of its stores and sell some of the aging inventory at below retail to salvage its operations, it is unreasonable to believe that it would realize a return on this collateral as a going concern. On the other hand, it is equally unreasonable to accept KSA's argument that the method of realizing the best return for the inventory would be through orderly liquidation of all the collateral, especially since KSA has used the collateral to restructure its program into what Greenlees testified are nine extremely profitable stores. This Court is satisfied that, under the facts of this case, the value of the collateral as it existed as of the date of the petition was $2,667,000.00, the amount KSA actually realized from the sale of the collateral. This figure represents sales made at retail and at orderly liquidation, sales that were, under the circumstances, commercially reasonable dispositions.

Since this Court has set the value of the collateral at $2,667,000.00 and Mercantile was owed approximately $1,343,000.00, this leaves $1,324,000.00 worth of collateral as security for the $660,000 owed to Doe Spun on the date of the petition, making Doe Spun fully secured. Based on the foregoing, this Court finds that on the date of the petition, Doe Spun had a fully secured claim in all of KSA's collateral except for that collateral which was brought into the Beloit, Wisconsin store before July 26, 1985, and that Doe Spun is entitled to receive adequate protection payments in the amount of $26,571.45 per month as previously ordered by this Court.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Amended Motion to Value Collateral and to Modify Order Affording Adequate Protection be, and the same is hereby, granted in part and denied in part, and KSA be, and the same is hereby, ordered to make adequate protection payments in the amount of $26,571.45 per month to Doe Spun, Inc. as previously ordered by this Court. It is further

ORDERED, ADJUDGED AND DECREED that the Emergency Motion for Relief From Stay for Failure to Comply with Court Orders be, and the same is hereby, denied, provided that KSA continue to make adequate protection payments as ordered in the above paragraph. It is further

ORDERED, ADJUDGED AND DECREED that the Clerk be, and the same is hereby, ordered to release the funds held in the registry of this Court in the amount of $79,926.97, representing adequate protection payments made by KSA for the months of May, June, and July, 1986 to Doe Spun upon Doe Spun's application. It is further

ORDERED, ADJUDGED AND DECREED that a copy of this order be placed in the file for adversary proceeding # 86–312, The Kids Stop of America, Inc., Plaintiff, v. Doe Spun, Inc., Defendant.

A separate final judgment will be entered in the adversary proceeding in accordance with the foregoing.