Irving GENNET, Trustee in Bankruptcy, Appellant,

v.

Stewart E. FASON, Appellee.

No. 94–8156–Civ.
Bankruptcy Nos. 91–32662–BKC–RAM, 93–786–BKC–RAM–A.

United States District Court, S.D. Florida.

Jan. 6, 1995.

Lisa J. Chaiklin, Furr and Cohen, P.A., Boca Raton, FL, for appellant.

Stewart E. Fason, pro se.

*MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S MEMORANDUM OPINION ENTERED ON JANUARY 31, 1994, AND THE BANKRUPTCY COURT'S FINAL JUDGMENT ON TRUSTEE'S COMPLAINT TO AVOID PREFERENTIAL TRANSFER ENTERED FEBRUARY 11, 1994*

ARONOVITZ, District Judge.

The appellant, Irving Gennet, trustee in bankruptcy for the debtor PC Systems, Inc., appeals from (1) the Bankruptcy Court's Memorandum Opinion entered on January 31, 1994, denying the Trustee's Motion for Partial Summary Judgment as to the Validity of Lien Claimed by Defendant Stewart E. Fason and granting summary judgment for Fason, the Appellee, appearing *pro se*, as to the validity of Fason's lien on inventory removed from Florida to Missouri and Kentucky within the four months prior to June 30, 1991, *In re PC Systems, Inc.*, 163 B.R. 382 (Bankr.S.D.Fla.1994), and (2) the Bankruptcy Court's Final Judgement on Trustee's Complaint to Avoid Preferential Transfer entered February 11, 1994.

## PROCEDURAL BACKGROUND

On August 3, 1993, Gennet initiated the underlying adversary proceeding by filing a Complaint to Avoid Preferential Transfer against Fason, a creditor of PC Systems. The complaint concerns a voluntary foreclosure on all of the assets of PC Systems by Fason on or about June 30, 1991. Pursuant to 11 U.S.C. § 547(b), Gennet sought to avoid as preferential the foreclosure of assets located in Missouri and Kentucky. This matter was presented to the Bankruptcy Court in a motion for summary judgment by the trustee, Gennet. At the hearing on November 2, 1993, the parties agreed that the facts were substantially undisputed and waived oral argument. The undisputed facts follow.

## FACTUAL BACKGROUND

On February 2, 1990, PC Systems and Fason entered into an Agreement for Purchase and Sale of Assets, pursuant to which PC Systems executed a promissory note for approximately $3.2 million in favor of Fason. To secure the loan, PC Systems granted Fason a security interest in essentially all of its present and future assets ("Inventory").[1] At the time of the transaction, PC Systems operated stores throughout Florida, one store in St. Louis, MO and one in Richmond, KY. Fason filed a UCC Financing Statement in Florida in February 1990, but never filed in Missouri or Kentucky.

PC Systems defaulted on the note, and on June 30, 1991, within 90 days of the bankruptcy filing, PC Systems voluntarily turned over to Fason all of its assets, including the Inventory in Kentucky and Missouri. The trustee asserts that the turnover of that KY and MO Inventory, allegedly worth over $187,000, constitutes a voidable preferential transfer under 11 U.S.C. § 547(b).[2]

The parties stipulated to the existence of all but one element of a § 547(b) preferential transfer. They only disputed whether the transfer enabled Fason to receive more than he would have received in the Chapter 7 case had the transfer not been made. 11 U.S.C. § 547(b)(5). If the KY and MO Inventory was not subject to a perfected security interest, the transfer enabled him to receive more than he would have in a Chapter 7 liquidation.[3] Gennet asserts that Fason's security interest in the Kentucky and Missouri Inventory was not perfected due to Fason's failure to file financing statements in those states.

---

[1] The Bankruptcy court referred to PC System's present and future assets as "Inventory." *PC Systems, Inc.*, 163 B.R. at 384. For consistency, this court will do the same.

[2] A preference is a transfer within 90 days of the filing of a petition (or within one year if the creditor was an insider) on account of an antecedent debt made while the debtor is insolvent that enables a creditor to receive more than it would in a Chapter 7 case if the transfer had not been made. *See* 11 U.S.C. § 547(b).

[3] Under 11 U.S.C. § 544(a), the trustee possesses a hypothetical lien on the Inventory as of the commencement of the case. If Fason did not possess a perfected lien against the Inventory, it would be liquidated for the benefit of all creditors.

## ISSUE ON APPEAL

■ Section 9–103(1)(d) of the U.C.C., as adopted in Florida, Kentucky and Missouri, provides that when goods subject to a perfected security interest in one state are transferred to another state, the security interest remains perfected if, within four months after the transfer, the goods are perfected in the transferee state. The creditor loses his perfected status if he does not re-perfect his interest in the transferee state within the four-month period. The specific language of § 9–103(1)(d) is as follows:

> When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by Part 3 of this Article to perfect the security interest,
>
> (i) if the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal;
>
> (ii) if the action is taken before the expiration of the period specified in subparagraph (i), the security interest continues perfected thereafter ...

U.C.C. § 9–103(1)(d), codified at Mo.Stat. Ann. § 400.9–103(1)(d) (1993); Ky.Rev.Stat. § 355.9–103(1)(d) (1987).[4] Part 3 of Article Nine generally requires the lender to either take possession of the collateral or to refile in the destination state in order to continue his perfection after removal. *See* U.C.C. § 9–305.

Fason attested, and the bankruptcy court accepted as true, that all of PC Systems' goods were originally shipped to the main location in Florida and then reshipped to satellite stores, that 95% of the KY and MO Inventory had, at the time of the turn over, been there fewer than 120 days, and that he took unequivocal, absolute and notorious possession of the Inventory as of July 1, 1991. Gennet does not dispute those attestations. He contends, however, that the four month window begins to run upon the shipment of the first piece of collateral. Thus, he asserts, the four month window began to run shortly after February 1990, expiring by June 1990, and leaving Fason's security interest in that Inventory unperfected.

The issue before the bankruptcy court and on appeal today is as follows: When property subject to a perfected security interest in one state is removed to another state, does the obligation to file a financing statement in the new state, pursuant to § 9–103(1)(d), arise within four months of the first time any of the collateral is removed, or alternatively, does the four-month window extend to each item of property individually as it is removed to the new state?

The bankruptcy court determined that the four-month period applied each time a specific piece of Inventory is removed. *PC Systems*, 163 B.R. at 386 (comparing *Matter of Kids Stop of America, Inc.*, 64 B.R. 397, 401 (Bankr.M.D.Fla.1986)). It reasoned that if the four-month period was triggered as soon as any item of the collateral was removed, then "all collateral removed thereafter is immediately unperfected." *Id.* The court rejected that result and the trustee's assertion that Fason never perfected the KY and MO Inventory. The court ruled that "Fason is perfected as to all inventory removed within four months prior to the voluntary foreclosure, because at that time his interest was again perfected by taking possession." *Id.*

## DISCUSSION

### A. U.C.C. § 9–103(1)(d)

■ As a pure conclusion of law, this court reviews the bankruptcy court decision under

---

4. Florida, Missouri and Kentucky all have adopted the Uniform Commercial Code without significant statutory changes. The court will refer to the general U.C.C. provisions rather than specific state laws. Notwithstanding the citation

to the general provisions, under the choice of law provision in U.C.C. § 9–103(1)(b), Missouri law and Kentucky law apply to determine whether Fason's interest in those states was perfected.

a *de novo* review. *In re Chase and Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990). Under this standard, the bankruptcy court's decision should be affirmed.

■ Where statutory language is clear, the court must give effect to that language, in the absence of patent absurdity. *I.N.S. v. Cardoza Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). According to the statutory language of U.C.C. § 9–103(1)(d), the four-month window applies to each piece of collateral removed from Florida.

Only at issue is the specific Inventory located in Missouri and Kentucky on July 1, 1991. That Inventory arrived there from Florida after March 1, 1994. Section 9–103(1)(d), as applicable here, provides simply that when that collateral is brought from Florida into Kentucky and Missouri while subject to a perfected security interest under Florida law, it remains perfected without interruption if any action required to perfect in Kentucky and Missouri occurs before the expiration of four months, July 1, 1991. Fason took the required action by taking possession of the collateral on July 1, 1991. That collateral which Fason recovered, therefore, remained perfected without interruption.

The U.C.C. provides that creditors' security interests attach in specific items of property when the debtor obtains rights in that property. *See* U.C.C. § 9–203. The language of § 9–103(1)(d) consistently refers to "the collateral" indicating the same specific collateral throughout. The language reads: "When collateral is brought into and kept in this state" action must occur in this state before "the end of four months after **the collateral** is brought into this state ..." U.C.C. § 9–103(1)(d) (emphasis added). This language indicates that the four-month period runs from the time of transfer of the collateral to which the UCC section is currently being applied—that collateral located in Kentucky and Missouri on July 1, 1991. *Accord Kids Stop*, 64 B.R. at 400–02.

If Gennet's interpretation had been intended, the language would require that action be taken before "the end of four months after collateral is **first** brought ..." or "**any** collateral is brought ..." or "**the first item of** collateral is brought ..." Nothing in the language, however, indicates that the first transfer of collateral triggers the four-month period for any collateral transferred thereafter. Instead, the window applies to each item of collateral that is removed.

Gennet argues that this interpretation effectively grants Fason a perfected "secret lien," which is prohibited by the U.C.C. *Associated Industries v. Keystone General, Inc.*, 135 B.R. 275, 282 (Bankr.S.D.Ohio 1991) (a secret lien is "something simply prohibited by the Uniform Commercial Code"). This perfected secret lien creditor, secured by assets that turn over within four months, will never have to file financing statements in the destination states. Moreover, he asserts, a diligent creditor who searches the filing records in Missouri and Kentucky would find no liens. A diligent creditor who searches those records would, however, find that the single PC System store in each of those states was a satellite of a Florida corporation and that each store received its goods from Florida where the goods might be encumbered.

Furthermore, even if correct, Gennet's conclusions do not alter the language of the U.C.C. sections or the outcome of their application. In fact, as the trustee argues, a creditor may not be obligated to ever refile in the destination state. Section 9–103(1)(d) specifically contemplates situations where no filing is necessary: "... the security interest remains perfected, but **if action is required** by Part 3 of the Article to perfect the security interest ..." U.C.C. § 9–103(1)(d) (emphasis added). For example, the creditor with a purchase money security interest in consumer goods perfected automatically by the origin state's § 9–302(1)(d) will not be required by Article 3 to take action to perfect; that creditor will automatically be perfected by the destination state's § 9–302(1)(d).

**B. U.C.C. § 9–103(1)(c)**

Gennet also argues that Fason knew the Inventory would be kept in MO and KY. Thus, he argues, the court erroneously ignored § 9–103(1)(c), under which Fason's

knowledge that the Inventory would be kept in MO and KY would require Fason to record his security interest in those states within 30 days.[5] He further argues that this knowledge makes Fason ineligible for the four-month grace period in § 9–103(1)(d). In support, the trustee relies upon *In re Automated Bookbinding Services, Inc.*, 471 F.2d 546, 554–55 (4th Cir.1972); and *In re Duplan Corp.*, 455 F.Supp. 926 (S.D.N.Y.1978).

Section 9–103(1)(c) applies when a purchase money security interest in non-mobile ordinary goods attaches in one state, and the parties understand that the collateral will be kept in another state. The trustee asserts that because PC Systems granted Fason a purchase money security interest and because Fason knew that the Inventory would be kept in MO or KY, § 9–103(1)(c) placed a burden on Fason to record his security interests in those states within 30 days.

■ Gennet's argument fails for four reasons. First, the trustee did not raise the § 9–103(1)(c) argument before the bankruptcy court.[6] The Eleventh Circuit has stated, as a general principle of appellate review, that an appellate court will not consider issues not presented to the trial court. *See Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548, 1551 (11th Cir.1991); *McGinnis v. Ingram Equipment Co., Inc.*, 918 F.2d 1491, 1495 (11th Cir.1990) (en banc). This Court need not entertain this new argument on appeal.[7]

■ Second, § 9–103(1)(c) merely proscribes a jurisdictional mechanism to govern in a particular circumstance. "The 30–day period is not a period of grace during which filing is unnecessary or has retroactive effect, but merely states the period during which the other jurisdiction is the place of filing." U.C.C. § 9–103, 1992 Main Volume Official Comment.

■ Third, that circumstance does not exist here. The trustee's premise regarding Fason's knowledge has not been established as true. The record, as it now stands, does not conclusively show that Fason knew, at the time his security interest attached, that the Inventory would be moved to, and kept in, KY or MO. That notwithstanding, the jurisdictional rule established in § 9–103(c)(1) provides that the law of the destination jurisdiction governs until thirty days after the debtor receives possession. If the collateral has not been moved to the destination state within thirty days, subsection (c)(1) ceases to be applicable and the law of the jurisdiction where the collateral is located (Florida) controls perfection. The record is also void of any showing that the Inventory was shipped to Kentucky and Missouri within thirty days of its arrival in Florida. Thus, subsection (1)(c) is no longer, if ever, applicable and subsection (1)(d) controls—the collateral was brought into Kentucky and Missouri subject to a security interest perfected in Florida.

■ Fourth, § 9–103(1)(c) applies only to purchase money security interests in goods. Gennet asserts that Fason received a pur-

---

5. Section 9–103(1)(c) pertains to "Documents, instruments and ordinary goods" and provides: (c) If the parties to a transaction creating a purchase money security interest in goods in one jurisdiction understand at the time that the security interest attaches that the goods will be kept in another jurisdiction, then the law of the other jurisdiction governs the perfection and the effect of perfection or non-perfection of the security interest from the time it attaches until thirty days after the debtor receives possession of the goods and thereafter if the goods are taken to the other jurisdiction before the end of the thirty-day period. U.C.C. § 9–103(1)(c).

6. Gennet based his Motion for Partial Summary Judgment in the bankruptcy court solely on the four month rule in § 9–103(1)(d).

7. One exception to the general rule prohibiting appellate review of an issue in the first instance is "when a pure question of law is involved and a failure to consider it would result in a miscarriage of justice." *Easterwood*, 933 F.2d at 1551; *Martinez v. Mathews*, 544 F.2d 1233, 1237 (5th Cir.1976). This exception does not apply here, because the resolution of whether § 9–103(1)(c) applies necessarily depends on the resolution of whether the parties understood at the time the security interest attached that the goods would be kept in another state. *See* White & Summers, *Uniform Commercial Code* § 23–18 (3d Ed. 198) ("if the minds do not meet on where the debtor intends to keep the goods or if such a meeting occurs after the security interest attaches ... 9–103(1)(c) will either not apply at all or will apply quite uncertainly"). That is an issue of fact.

chase money security interest, as defined by U.C.C. § 9–107. To the extent that the MO and KY Inventory consists of consumer goods, U.C.C. § 9–302 applies and eradicates the necessity for filing financing statements to perfect the security interest. Section 9–302, as adopted by Florida, Kentucky, and Missouri, provides: "A financing statement must be filed to perfect all security interests except the following: . . . a purchase money security interest in consumer goods." U.C.C. § 9–302(1)(d).[8] Thus, the security interest in consumer goods Inventory is automatically perfected without filing a financing statement.

## C. The Case Law

Finally, the court is not persuaded by the cases cited by the trustee in support of denying Fason the four-month grace period in § 9–103(1)(d), because he knowingly allowed Inventory to be moved to states without taking the necessary steps to perfect his interest. In *Automated Bookbinding,* the Fourth Circuit noted that "§ 9–103(3) was designed to protect creditors against *debtors'* moving the collateral, not to allow secured parties a 4–month exemption from filing under all circumstances." 471 F.2d at 555.[9] That court held the § 9–103 four-month grace period from filing did not apply to HMC, "a secured party, who knowingly transferred the collateral" to another state. *Id.*[10] The trustee claims that the four-month grace period in § 9–103(1)(d) does not protect Fason as he too is a secured party, who knew where the collateral was being transferred.

*Automated Bookbinding* concerned entirely different circumstances. That case involved a dispute between two secured creditors, FCA and HMC, over a machine. In 1968, FCA perfected, by filing a financing statement, a security interest in all of the debtor's present and after-acquired equipment in Maryland. Two years later the debtor granted HMC a purchase money security interest in a new machine. The machine arrived in New York at HMC's agent's office and was delivered to a common carrier with instructions to ship it to the debtor in Maryland. Thirteen days after the arrival in Maryland, HMC perfected its interest by filing a financing statement there. The court first questioned whether HMC's New York possession of the machine was the type of possession that perfects a security interest under U.C.C. § 9–305. The court then decided that even if that possession did perfect the security interest, it did not continue because HMC did not retain possession. Thus, neither § 9–103(1)(c) or (d) actually applied.

Relying upon the second sentence of § 9–103(3), which parallels § 9–103(1)(c), the court found further that because HMC knew the machine would be kept in Maryland, that state's law governed and HMC needed to file there. The court finally ruled, consistent with the underlying policy of § 9–103 that when the secured party (HMC) knows where the collateral is to be taken and even arranges for its transportation, it should not be permitted to avail itself of the four-month rule. FCA, therefore, was given first priority in its security interest.

Under those circumstances this court would agree that the provisions of § 9–103(1)(d) would not be applicable. *Automated Bookbinding* has been cited and followed as a case in which the court refused to enforce the literal terms of the statute because it would produce a result at odds with its

---

8. The applicability of this statute was not raised in the bankruptcy court. The court mentions it only as alternative support for the conclusion that § 9–103(1)(c) is inapplicable here. *See supra* text accompanying note 7.

9. The court referred to U.C.C. § 9–103(3). This is the earlier version of the statute, which contained, with little difference, the provisions of § 9–103(1)(b)–(d). The third sentence of the earlier version provides:

   If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this State, the security interest continues perfected in this State for four months and also thereafter if within the four months period it is perfected in this State.

   U.C.C. § 9–103(3).

10. The District Court ruled on two alternative grounds. The Fourth Circuit reversed on the original ground and continued to address the alternative holding. This analysis concerns the Fourth Circuit's reversal of the District Court's alternative holding.

underlying policy. *See In re C Tek Software, Inc.*, 117 B.R. 762, 770 (Bankr.D.N.H.1990). The extenuating circumstances that existed there are not, however, present here. This court, therefore, declines to adopt that holding or deviate from the plain literal language of the statute.

The Trustee also attempts to distinguish *Kids Stop* on its facts. The bankruptcy court relied upon that case, and it supports this decision as well. There, the Bankruptcy Court for the Middle District of Florida found that under U.C.C. § 9–103(1)(d), as adopted in Florida, Michigan, Wisconsin and Illinois, the creditor "has a perfected security interest in **any** inventory moved from Florida into Michigan, Wisconsin, or Illinois within the four months" prior to a court order which granted the creditor a perfected replacement lien on all post-petition inventory. *Kids Stop*, 64 B.R. at 401 (emphasis added). Gennet asserts that the case does not apply "because in *Kids Stop* (1) the creditor did not have a perfected security interest so § 9–103(1)(c) was not at issue; (2) the stores were not open at the time the secured party was granted a security interest; (3) the stores opened within four months prior to the Court's order granting a perfected security interest; and (4) the Judge was confirming and enforcing his own prior order relating to enforcing a security interest." Appellant's Brief, p. 12. The Trustee fails to explain and the court fails to understand the significance of these differences. They do not render the case inapplicable here.

■ Finally, Gennet contends that § 9–103(1)(d) was never intended to cover inventory constantly flowing from one state to another over an extended period of time. He cites no supporting statutory law, case law or other authority, and research has not revealed a case that supports this proposition. In addition, § 9–103(1)(d) does not except from its provisions inventory flowing from one state to another over an extended period of time. The Court will not create an exception that otherwise does not exist under the statute.

## CONCLUSION

Because the Inventory was subject to Fason's perfected security interest, the turnover did not enable Fason to receive more than he would have in a Chapter 7 liquidation. *See* 11 U.S.C. § 547(b)(5). Accordingly, the turnover did not constitute a preferential transfer under 11 U.S.C. § 547(b). It is

ORDERED AND ADJUDGED that the Bankruptcy Court's Memorandum Opinion entered on January 31, 1994, denying the Trustee's Motion for Partial Summary Judgment as to the Validity of Lien Claimed by Defendant Stewart E. Fason and granting summary judgment for Fason, the Appellee, as to the validity of Fason's lien on inventory removed from Florida to Missouri and Kentucky within the four months prior to June 30, 1991, and the Bankruptcy Court's Final Judgement on Trustee's Complaint to Avoid Preferential Transfer entered on February 11, 1994, are hereby AFFIRMED.

DONE AND ORDERED.